UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| ELAINE SCOLA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 1:11-CV-101 |
| v. | ) | |
| | ) | Judge Curtis L. Collier |
| PUBLIX SUPER MARKETS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

Before the Court is a motion for summary judgment filed by Defendant Publix Super Markets, Inc. ("Defendant" or "Publix") (Court File No. 12). Plaintiff Elaine Scola ("Plaintiff") submitted a response (Court File No. 16) and Defendant submitted a reply (Court File No. 17). For the following reasons, the Court will **GRANT** Defendant's motion for summary judgment (Court File No. 12).

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Elaine Scola was hired as a part-time cashier at Defendant Publix Super Markets, Inc. in Ooltewah, Tennessee on November 15, 2008 (Court File No. 16-3 ("Scola Dep."), at 30, 33). At the time she was hired, Plaintiff was 56 years old (*id.* at 13). Prior to working at Publix, Plaintiff worked as owner and manager of a family-run business from 1985 to 2003 (*id.* at 24-25).

Plaintiff's cashier duties included making correct change, ringing up customers, bagging groceries, and assisting customers in finding groceries (*id.* at 39). Cashiers also must know how to operate the cash register. Finally, cashiers have some "front office" duties such as making refunds and giving customers money orders (*id.* at 39). According to Defendant, the cashier position is part

of the store's Customer Service Department and all the employees in the department report to the customer service manager (Court File No. 14-6 ("Wilcox. Dep.") at 11). Amanda Wilcox was the customer service manager when Plaintiff first started (Scola Dep. at 74-75). She was replaced by Patti Roberts in September 2010. Jeri Neumann was the assistant customer service manager (*id.*). Other individuals in management relevant to the case are John Westall, district manager from April 2010 to April 2012; Todd Walker, Plaintiff's store manager; and Isaiah Hall, Plaintiff's assistant store manager.

In December 2008 Plaintiff submitted a Registration of Interest ("ROI") form indicating she was interested in a customer service staff ("CSS") or administrative coordinator position (Scola Dep. at 110-12). She submitted a new form approximately every six months after submitting her initial request (*id.*). The cashier, administrative coordinator, and CSS positions are all hourly, non-management positions (*id.* at 74; Court File No. 14-7 ("Westall Dep.") at 82). Plaintiff acknowledges that all positions are hourly unless you are a manager (Scola Dep. at 74).

The CSS position involves some work at the front office. According to Plaintiff, those duties include but are not limited to handling customer questions, "ringing up and scanning groceries for [ ] customers, selling lottery tickets, [and] counting down lottery tickets" (Scola Dep. at 113). The CSS may also act as a "front end coordinator." According to Plaintiff, the front end coordinator gets to coordinate breaks, assign registers to incoming employees, make sure the shopping carts are brought in, make sure associates get their breaks, and assign nightly tasks to associates (*id.* at 115). The CSS can also perform certain cash-handling tasks that cashiers cannot perform (*id.* at 114, 121-22). Although Plaintiff has had opportunities to perform some of the front office and front end coordinator tasks, a number of those tasks are not part of the cashier job description (*id.* at 117, 119-

2

22).

Since Plaintiff submitted her first ROI form, Rachel Barnes, Gina Saches, Heather Borges, and Kelly Simpson have been placed in the CSS position at the Ooltewah store (Scola Dep. at 139-40).[1] Rachel Barnes, Gina Saches, and Heather Borges changed positions from cashier to CSS during or slightly after June 2009 (*id.* at 143-45). Kelly Simpson changed positions from cashier to CSS near the end of 2009 (*id.* at 146).[2]

Other individuals who have worked at the Ooltewah store in the CSS position since Plaintiff submitted her ROI form include Marcia Trumbull, Nicole Pendergrass, Angela Anderson, and James Cordell. Marcia Trumbull previously worked for Publix as a CSS and was rehired into the CSS position in November 2009 (*id.* at 139-40; Court File No. 11).[3] Nicole Pendergrass has been working as a CSS since March 2009 (Court File No. 11), but also previously worked as a CSS when the store opened in 2008. Additionally, she has held the position of customer service team lead (Court File No. 11; Wilcox Dep. at 52). Finally, James Cordell and Angela Anderson transferred from Publix stores in Georgia and Florida to the Ooltewah store in June and July 2010, respectively (Court File No. 11; Scola Dep. at 141; Wilcox Dep. at 50-51, 53, 73). Both worked in the CSS position prior to their transfer (*id.*).

According to Plaintiff, the administrative coordinator helps train new associates and monitors a computer training program (Scola Dep. at 112). The Ooltewah store only has one administrative

---

[1] Although Plaintiff's brief mentions employee Stephanie Sowers, Plaintiff admits in her deposition that Ms. Sowers did not have the position of CSS (Scola Dep. at 140-41).

[2] According to Defendant, Simpson became a CSS in November 2009.

[3] Plaintiff references "Marcia Trumbull" in the court filings; Defendant calls her "Marcia Trumball."

3

coordinator, Ginger Teems (Court File No. 11). Ms. Teems, who is 54 years old, has held this position the entire time Plaintiff worked at the store (Court File No. 11; Scola Dep. at 112-13).

The general process for hiring at Publix is as follows. Step one involves management reviewing the Associate Registering an Interest ("ARI") report, which shows all the employees who have expressed an interest in a position by filling out the ROI form (Westall Dep. at 34). The second step requires that the employee satisfy the minimum requirements for the position she is seeking (*id.*). Step three provides that management can select an employee who meets the minimum qualifications for the position from the store-specific ARI report. Finally, step four allows management to select an employee who meets the minimum qualifications from the district-specific ARI report or any other applicant (Court File No. 16-10 ("Roberts Dep."), at 125-26). According to Defendant, the store may vary from this process due to an employee's "poor performance, availability, or other job-related reasons" (Westall Dep. at 35). Defendant also contends it will try to "make room" for associates that need to transfer and help them maintain their prior employment status even if there may not have otherwise been an available position (Wilcox Dep. at 55-56; McConnell Dep. at 76-77).

The parties dispute Plaintiff's work performance record. Plaintiff received regular evaluations as an employee at Publix. Her evaluation scores show she met store expectations (Scola Dep. at 76, 80-82, 88-89, 94-95, 98-99; Court File No. 14-2 ("Pl.'s Dep. Ex.") at 6-11), although Defendant contends a score of "meets expectations" is an "average" rating (Court File No. 14-3 ("Walker Dep."), at 81; Roberts Dep. at 129). In the written comments section of Plaintiff's evaluations, management highlighted her strengths as well as areas where she needed improvement (*see* Pl.'s Dep. Ex. 6-11). Plaintiff has received a few awards from management for her customer

4

service (Scola Dep. at 241-42; Court File No. 16-7 ("Neumann Dep."), at 105-06). However, Defendant claims it has had some problems with Plaintiff's interactions with customers and fellow employees; none of those interactions resulted in Plaintiff receiving a written reprimand though (Walker Dep. at 62-65; 175-79). According to Defendant, Plaintiff's availability to work changed often while she worked at the Ooltewah store (Walker Dep. at 71-72; Wilcox Dep. at 61-62, 70, 128; Scola Dep. at 43-66). Plaintiff, however, offers evidence showing all of her "time away from work" requests were granted (Scola Dep. at 43).

Plaintiff presents evidence of various managers (i.e. Walker, Neumann, Roberts, Wilcox, and Hall) who either ignored her when she sought help on the job or treated her disrespectfully (Scola Dep. at 124-130, 134-37, 191). She also notes that Isaiah Hall referred to her as an "old lady" on a few occasions (Scola Dep. at 129-30; (Court File No. 16-12 ("McConnell Dep."), at 116-17). Plaintiff complained to Steve McConnell in human resources at Publix on February 1, 2010, and other later dates, expressing her frustrations with the job. Plaintiff received front office training in March 2010 (Scola Dep. at 160), but never received a promotion. No employee has been put in the CSS position or transferred into the position of CSS at the Ooltewah store since July 2010 (*see* Wilcox Dep. at 52).

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission and the Tennessee Human Rights Commission on approximately July 30, 2010 (Scola Dep. at 188-89; Pl.'s Dep. Ex. 20). On April 20, 2011, Plaintiff filed a complaint against Defendant before this Court (Court File No. 1). In the complaint, Plaintiff alleges Defendant failed to promote Plaintiff on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*; and the

5

Tennessee Human Rights Act, Tenn. Code Ann. §§ 4-21-101 *et seq.* (Court File No. 1 ¶¶ 17-23). Plaintiff also alleges violations of 42 U.S.C. § 1981. Finally, Plaintiff asserts a hostile work environment claim as well as claims of intentional infliction of emotional distress and negligent infliction of emotional distress. Plaintiff seeks compensatory damages, punitive damages, injunctive relief, and attorney's fees. Pending before the Court is Defendant's motion for summary judgment (Court File No. 12).

## II.     STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-CV-63, 2009 WL 3762961, at *2-3 (E.D. Tenn. Nov. 4, 2009) (explaining the Court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence

to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should enter summary judgment. *Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III.     DISCUSSION

### A.     Title VII and 42 U.S.C. § 1981 Claims

Defendant argues Plaintiff's Title VII and 42 U.S.C. § 1981 claims should be dismissed because Plaintiff failed to demonstrate Defendant discriminated against Plaintiff on the basis of race as is required under § 1981, or on the basis of race, color, religion, sex, or national origin as is required under Title VII. In her response brief, Plaintiff concedes these claims are inapplicable to the instant case (Court File No. 16-1 at 18). Accordingly, Plaintiff's Title VII and § 1981 claims are **DISMISSED**.

### B.     ADEA and THRA Claims

Plaintiff brings both ADEA and THRA claims against Defendant. The analysis for Plaintiff's state-law THRA claim is identical to the analysis for an age discrimination claim brought under the federal ADEA, 29 U.S.C. §§ 623 *et seq. Jones v. Memphis Light, Gas & Water Div.*, 346 F. App'x 38, 43 (6th Cir. 2009); *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 620 (6th Cir. 2006) ("We

7

apply the same analysis to age-discrimination claims brought under the THRA as those brought under the ADEA."). Both prohibit employers from discriminating against an employee because of that employee's age. 29 U.S.C. § 623(a); Tenn. Code. Ann. §4-21-401(a)(1).

To prove age discrimination, a plaintiff must establish a violation by either direct evidence or circumstantial evidence. *Geiger v. Tower Automotive*, 579 F.3d 614, 620 (6th Cir. 2009). Direct evidence is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's action." *Id.* (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003)). By contrast, circumstantial evidence "is proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.* Whether by direct or indirect evidence, a plaintiff must prove "age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 177-78 (2009).

Plaintiff's ADEA and THRA claims pertain to Defendant's failure to promote Plaintiff to a CSS position or an administrative coordinator position. The Court will address each claim in turn.

### 1. Customer Service Staff Position

Plaintiff first contends Defendant failed to promote her to the position of CSS. She admits that her failure to promote claims pertaining to some of Defendant's employees must be dismissed at the outset for procedural reasons. In particular, her ADEA claims regarding the selection of Gina Saches, Heather Borges, and Rachel Barnes for the CSS position are time barred because the applicable statute of limitations has expired (Court File No. 16-1 at 18). Moreover, her THRA claims with respect to the selection of Gina Saches, Heather Borges, Rachel Barnes, Kelly Simpson, and Nicole Pendergrass are similarly time barred (*id.*). As a result, the Court will not consider these

8

claims as they pertain to these individuals. The ADEA and THRA claims that remain include Plaintiff's (1) ADEA claim that Plaintiff should have received the CSS positions ultimately given to Cordell, Anderson, Trumbull, Pendergrass, and Simpson and (2) THRA claim that Plaintiff should have received the CSS position given to Cordell and Anderson.

To support these claims using direct evidence, the evidence must leave little doubt in the factfinder's mind that age discrimination occurred. *Minadeo v. ICI Paints*, 398 F.3d 751, 763 (6th Cir. 2005) ("Direct evidence is evidence that proves the existence of a fact without requiring any inferences.") (quoting *Rowan v. Lockheed Martin Energy Sys.*, 360 F.3d 544, 548 (6th Cir. 2004)). Statements not made by decisionmakers, or statements made by decisionmakers "unrelated to the decisional process itself cannot suffice to satisfy the plaintiff's burden" under the direct evidence approach. *Geiger*, 579 F.3d at 621 (quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998)) (internal alterations omitted). In addition, the statement must clearly evince the decisionmaker's intent to discriminate on the basis of age. *Scott v. Potter*, 182 F. App'x 521, 526 (6th Cir. 2006) ("'Only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age,' satisfy this criteria.") (quoting *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989)). Here, the only direct evidence offered by Plaintiff are comments allegedly made by assistant manager Isaiah Hall referring to Plaintiff as an "old lady" (McConnell Dep. at 116; Scola Dep. at 130-32). Plaintiff, however, has not offered any evidence showing Mr. Hall was a decisionmaker with respect to placing employees in the CSS position nor that his statements had any connection to the decisional process (Scola Dep. at 182; Court File No. 14-4 ("Hall Dep."), at 19-20). Accordingly, Plaintiff's ADEA and THRA claims fail under a direct evidence analysis.

9

Alternatively, Plaintiff can show Defendant failed to promote her to the CSS position by satisfying the burden shifting analysis for circumstantial evidence under *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish an age discrimination claim under this framework, the plaintiff must first demonstrate a prima facie case by proving "(1) she is a member of the protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the time the plaintiff's request for promotion was denied." *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812-13 (6th Cir. 2011). The plaintiff's burden at the prima facie stage is "not onerous." *Id.* at 813 (quoting *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000)). Once the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate nondiscriminatory reason for not promoting the plaintiff. *Id.* at 814. Finally, after the defendant offers its nondiscriminatory reason, the burden of production shifts back to the plaintiff to demonstrate that "the employer's proffered nondiscriminatory reason was not the true reason for the employment decision, bur rather a pretext for discrimination." *Id.* at 815.

Plaintiff easily satisfies the first element of her prima facie case (that is, she was in the protected class because of her age), but the remaining elements are in dispute. A common thread between the second, third, and fourth elements is they require that the change in positions be a "promotion." According to Plaintiff, moving from the position of cashier to CSS is a promotion. Defendant, however, contends the move from cashier to CSS is a "lateral move," and an employee is merely "reclassified" when moved from one to the other. Thus, in order to determine whether Plaintiff satisfied the remaining elements of her prima facie case, the Court must first determine

whether a promotion was even at issue. *Moore v. City of Columbus*, 129 F. App'x 978, 981 (6th Cir. 2005) (noting that "where an employee wants to transfer to a new position within the same organization,[courts] require[ ] the employee to show that the transfer would have been a promotion"). Factors a court can consider when deciding whether the change in positions is a promotion include "an increased salary, significantly changed responsibilities, a more distinguished title, or a gain in benefits." *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 183 (6th Cir. 2004). However, "a plaintiff's subjective impression concerning the desirability of one position over another generally does not control with respect to the existence of an adverse employment action." *Id.*

Here, Plaintiff has offered sufficient evidence to demonstrate a genuine issue of material fact exists with respect to whether the move from cashier to CSS is a promotion. For example, although Defendant contends the pay rate does not necessarily change when a cashier becomes a CSS, Plaintiff has shown there is a difference between the maximum pay rate that a cashier can obtain at each performance level compared to a CSS (Westall Dep. at 89-90; Walker Dep. at 113). Moreover, while it is undisputed that the CSS position is not a "management" position, Plaintiff has shown the CSS involves significantly increased leadership responsibilities. For example, while the CSS may perform some cashier duties, she is also responsible for coordinating breaks, assigning resisters to people beginning their shifts, and assigning nightly tasks to associates (Scola Dep. at 115). Moreover, the CSS performs some "front office" duties and cash handling tasks that are outside of the cashier's job responsibilities. While some of these differences are minimal, viewing the facts in the light most favorable to Plaintiff at this stage, the Court concludes Plaintiff has sufficiently shown that the move between titles is a promotion.

11

Taking this into account, the Court will proceed to examine the remaining elements of Plaintiff's prima facie case. With respect to the second element, Plaintiff has shown that she applied for the CSS position and met the minimum qualifications for the position, which are that an individual must be eighteen years old and have cashiering experience (Roberts Dep. at 8). Moreover, the Court concludes a genuine issue of material fact exists with respect to the third element--that is, whether Plaintiff was considered for and subsequently denied a promotion. Plaintiff submitted an ROI form every six months, and at least with respect to Mr. Simpson and Ms. Trumbull, she was denied the promotion that was ultimately given to Simpson and Trumbull. However, the parties dispute whether Plaintiff was denied the positions given to Cordell, Anderson, and Pendergrass. According to Defendant, Cordell, Anderson, and Pendergrass were all moved into the CSS position for personal reasons, and the regular hiring and reassignment process did not apply. Plaintiff, however, argues Defendant did not follow proper store procedure, which requires management to generally consider employees on the store's Associate Registering an Interest ("ARI") report before filling the position with an outside or transfer employee (Westall Dep. at 34-35). Viewing the facts in the light most favorable to Plaintiff, the Court will presume at this stage that Defendant was denied the positions later given to Cordell, Anderson, and Pendergrass.

The final element of Plaintiff's prima facie case involves whether other Publix employees with similar qualifications who were not members of the protected class received promotions at the time Plaintiff's request was denied. Two of the five employees at issue who later were promoted to CSS are also in the protected class--that is, Ms. Trumbull who was approximately 50 years old and Mr. Simpson who was 46 years old. The difference in age between Ms. Trumbull and Plaintiff is unlikely to be significant. According to Plaintiff, Ms. Trumbull was born in 1959 and Plaintiff was

born in 1952, resulting in an age difference of approximately seven years (Court File No. 16-1 at 19-20). It is well established in this circuit that "in the absence of direct evidence that the employer considered age to be significant, an age difference of six years or less between an employee and a replacement is not significant." *Grosjean v. First Energy Corp.*, 349 F.3d 332, 340 (6th Cir. 2003). Courts in this circuit have also concluded a difference of seven years may be insignificant when there is no other significant evidence of age discrimination. *See Conley v. Yellow Freight Sys., Inc.*, 2005 WL 2757363, at *7 (E.D. Tenn. Oct. 25, 2005). *Cf. Grosjean*, 349 F.3d at 340 (discussing precedent in this circuit establishing eight years can be a significant age difference). Here, taking into account both the seven-year age difference between Plaintiff and Ms. Trumbull as well as the fact that Plaintiff has not offered direct evidence of age animus, the Court concludes Plaintiff's prima facie case fails with respect to Ms. Trumbull.[4]

Moreover, Plaintiff has failed to demonstrate she is similarly qualified to the remaining comparators who were later promoted to the CSS position. The primary difference distinguishing Plaintiff from her comparators is experience. Mr. Simpson not only was in the protected class but he also possessed additional "front office" training and experience--a key part of the CSS position-- that Plaintiff had not received at the time the position was filled. Mr. Cordell and Ms. Anderson had previously worked in the CSS position--the position that Plaintiff was seeking--before being transferred to the Ooltewah store. Finally, Ms. Pendergrass was a customer service team lead, another position at Publix that has greater responsibilities than the cashier position, and had

---

[4] As noted earlier, the only evidence offered by Plaintiff showing age animus would be the "old lady" remarks made by Mr. Hall. Those statements are insufficient because Mr. Hall was not a decisionmaker with respect to CSS promotions nor were his statements related to the decisionmaking process. Furthermore, even if Ms. Trumbull had not been in the protected class, a reasonable factfinder could conclude Plaintiff was not similarly qualified to Ms. Trumbull, who had previously held the CSS position and was rehired into the same position.

13

previously worked as a CSS when the store first opened. Thus, although Plaintiff satisfied the minimum qualifications for the CSS position and offers evidence of satisfactory performance evaluations as cashier, she has not sufficiently demonstrated she was similarly qualified to the other individuals who were promoted to the CSS position at the time those positions became available. *Provenzano*, 663 F.3d 806 (noting that while the plaintiff need not establish she and her comparator had "the exact same qualifications," she must show "she possesses 'similar qualifications' to the employee who received the promotion"). Because a reasonable factfinder would be unlikely to conclude Plaintiff was similarly qualified to Cordell, Anderson, Simpson, or Pendergrass given their differing skills and experience, the Court concludes Plaintiff has not satisfied her prima facie case.

Although the Court's determination that Plaintiff failed to satisfy the fourth element of her prima facie case would be sufficient in itself to dismiss Plaintiff's ADEA and THRA claims, the Court will briefly discuss the remaining parts of the burden-shifting analysis to demonstrate that, even if it had concluded differently on the fourth element (that is, that Plaintiff was similarly qualified), Plaintiff's claims still lack merit. Defendant has offered legitimate, non-discriminatory reasons for not promoting Plaintiff to the CSS position. In particular, Defendant contends the other individuals were selected "because of their attitude, availability, performance and experience and training at that time working in the 'front office' as compared to Plaintiff" (Court File No. 13 at 23). Defendant also notes Plaintiff had significantly less availability than the other employees.

The burden then shifts back to Plaintiff to demonstrate Defendant's reasons are pretextual. A plaintiff can establish pretext "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003)

(quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)). Plaintiff contends Defendant's reasons are pretextual because genuine issues of material fact exist, particularly with regard to Plaintiff's performance, attitude, and availability.

Even assuming these issues are in dispute, however, Plaintiff has failed to show the remaining reasons are pretextual. Although Plaintiff argues she was qualified for the position and had the necessary experience and training, at issue are the relative qualifications between Plaintiff and her comparators (at this point, Cordell, Anderson, Pendergrass, and Simpson). "Relative qualifications establish triable issues of fact as to pretext where the evidence shows that either (1) the plaintiff was a plainly superior candidate, such that no reasonable employer would have chosen the latter applicant over the former, or (2) plaintiff was as qualified [] if not better qualified than the successful applicant, and the record contains 'other probative evidence of discrimination.'" *Provenzano*, 663 F.3d 806, 815 (6th Cir. 2011) (quoting *Bartlett v. Gates*, 421 F. App'x 485, 490-91 (6th Cir. 2010)). With respect to the first prong, Plaintiff has not shown she was a "plainly superior candidate." Most notably, all of the comparators had additional training or experience compared to Plaintiff. Cordell and Anderson had previously worked in the CSS position at other stores. Pendergrass had previously held the CSS and customer service team lead positions. Simpson had received additional training in areas such as the front office that made him a more attractive candidate for the position at the time it became available. Plaintiff has also failed to identify any significant weaknesses in the training and experience of these individuals to demonstrate that she possessed superior qualifications to them. For similar reasons, Plaintiff has not demonstrated that she is "as qualified" as the other individuals, even though she satisfied the minimum job requirements for the CSS position.

15

Finally, even assuming Plaintiff's qualifications were the same as her comparators, she has not shown the record contains other evidence of age animus towards Plaintiff. As evidence of discrimination, Plaintiff points to, among other things, the fact that management refused to offer Plaintiff training in the front office on several occasions and that certain managers did not first consider in-store employees when it hired other individuals to fill the position of CSS. However, in all of these examples Plaintiff fails to show how these actions on the part of management were motivated by age discrimination. The only evidence of age animus offered by Plaintiff are the statements made by Isaiah Hall referring to Plaintiff as an old lady. Mr. Hall, however, was not a decisionmaker nor were his comments made in relation to any decisionmaking process.[5] To survive summary judgment (and to prevail at trial), a plaintiff must be able to show she was the victim of intentional age discrimination. Because Plaintiff cannot show age discrimination was the "but-for" cause of Defendant's decision to promote Cordell, Anderson, Simpson, and Pendergrass, Plaintiff's claims must be dismissed.

## 2. Administrative Coordinator Position

Plaintiff also contends Defendant failed to promote her to the administrative coordinator position in violation of the ADEA and the THRA. This argument, however, lacks merit. First, with respect to the Ooltewah store, Plaintiff has not shown she was considered for the administrative coordinator position and denied a promotion. Based on the evidence in the record, Ginger Teems held the sole position of administrative coordinator at the Ooltewah store during Plaintiff's time at Publix, and there was never an opening for the position.

Plaintiff attempts to argue in her brief that Defendant, nonetheless, also failed to consider

---

[5] In fact, Defendant specifically raises this argument in its brief when discussing pretext and Plaintiff fails to respond.

her for a position at its East Brainerd location. According to Plaintiff, the position was given to a younger employee. Besides Plaintiff's failure to raise this theory in her complaint, the Court also notes Plaintiff has not demonstrated she can satisfy her prima facie case under this theory either. For example, with respect to the fourth element, Plaintiff alleges the "younger" employee was in her 50's, which would place her in the protected class. Plaintiff also has not offered any evidence showing she was similarly qualified to the person selected.

Accordingly, the Court concludes summary judgment should be granted with respect to Plaintiff's ADEA and THRA claims. Plaintiff's ADEA and THRA claims will be **DISMISSED**.

## IV.     HOSTILE WORK ENVIRONMENT

Defendant argues Plaintiff failed to properly plead a hostile work environment claim in her complaint. In the complaint, Plaintiff asserts under the claims section that "Plaintiff was denied equal opportunity in the terms and conditions of her employment with Defendant on account of her age creating a hostile work environment" (Court File No. 1 ¶ 19). Plaintiff also offers the following facts in her factual basis: (1) "Management personnel with Defendant have referred to Plaintiff as an "old lady" and (2) "Plaintiff has repeatedly complained to management about their failure to promote her to a Customer Service Staff or Administrative Coordinator position and she has been met with hostility from management and retaliated against for having contacted the Human Resources Department concerning these issues" (Court File No. 1 ¶¶ 12, 14). Although Plaintiff could certainly have provided more detail--such as noting whether the claim was being brought under federal law, state law, or both, among other things--Plaintiff has pleaded sufficient facts to put Defendant on notice of the allegations brought against it as required by Rule 8 of the Federal Rules

of Civil Procedure. Therefore, the Court will proceed to consider whether Plaintiff's hostile work environment claim should be dismissed in light of the applicable summary judgment standard. The Court will generously construe Plaintiff's hostile work environment claim as based upon both federal and state law.

To establish a hostile work environment claim under either the ADEA or the THRA, a plaintiff must prove the following four elements:

> 1. The employee is 40 years old or older;
> 2. The employee was subjected to harassment, either through words or actions, based on age;
> 3. The harassment had the effect of unreasonably interfering with the employee's work performance and creating an objectively intimidating, hostile, or offensive work environment; and
> 4. There exists some basis for liability on the part of the employer.

*Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834-35 (6th Cir.1996).[6] In determining whether a workplace is a hostile work environment, the court can look to see whether it is "permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57 (1986)). The court can also consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23. Finally, "[b]oth an objective and a subjective test must be met: the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." *Bowman v. Shawnee State Univ.*, 220 F.3d 456,

---

[6] As noted earlier, the analysis applied to age-discrimination cases brought under the ADEA is identical to the analysis used in state-law THRA cases.

463 (6th Cir. 2000).

Here, Plaintiff has only demonstrated she can satisfy the first element--that is, she is older than 40 years old. Whether Plaintiff can satisfy the second and third elements is not as straightforward. Although Plaintiff cites numerous instances in which other employees or managers may have made allegedly harmful or abusive comments to her, the only age-related comments were made by Isaiah Hall in which he referred to Plaintiff as an "old lady." Plaintiff contends Defendant made these remarks on approximately five occasions between 2009 and 2010 and that they made her feel demoralized. Of those comments, however, some did not even involve Mr. Hall directly referring to Plaintiff as an "old lady."[7] And even taking into account the instances where Mr. Hall referred to Plaintiff as an "old lady," which construed generously may constitute harassment, Plaintiff has not shown that Mr. Hall's conduct was so "severe and pervasive" that a reasonable person would objectively consider the work environment to be hostile and abusive.

Finally, Defendant argues Plaintiff may be attempting to rely upon her claims of disparate treatment under the ADEA and THRA to further support her hostile work environment claim. However, in *Ferguson v. Snow*, 185 F. App'x 456, 463 (6th Cir. 2006), the United States Court of Appeals for the Sixth Circuit explained that instances of non-selection or examples of the plaintiff being denied promotional opportunities do not, by themselves, create a hostile work environment. Instead, the court must look at the totality of the circumstances to see whether there was pervasive harassment. *See id.* Similarly, here, Plaintiff has not shown she has experienced pervasive

---

[7] For example, according to Plaintiff, "Mr. Hall asked me if I remembered a song back in the 50s and 60s. He said 'Elaine, the 50's and 60's is your era do you remember such and such song.' I said, 'I remember the song but my era was not the 50's and 60's. I was a kid in the 50's and 60's'" (Court File No. 14-2 at 8). On another occasion Plaintiff stated her birth year to another employee and Mr. Hall commented "Gee, did they make cars back then?" (*id.*).

19

harassment due to her age and the instances in which she was a denied a promotion are insufficient by themselves to support such a claim. Accordingly, Plaintiff's hostile work environment claim must be **DISMISSED**.


## V.       STATE LAW CLAIMS

Remaining are Plaintiff's claims of intentional infliction of emotional distress and negligent infliction of emotional distress. Similar to Plaintiff's hostile work environment claim, Defendant contends Plaintiff failed to sufficiently plead these two causes of action. Even assuming *arguendo* they were pleaded properly, the remaining claims are based on state law and were brought in a federal-question case. Because the federal claims have been dismissed, Plaintiff's intentional infliction of emotional distress and negligent infliction of emotional distress claims can only be heard by the Court through the exercise of supplemental jurisdiction, pursuant to 28 U.S.C. § 1367. The exercise of federal supplemental jurisdiction is discretionary. District courts may decline to exercise supplemental jurisdiction over a state law claim if:

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Here, the Court has dismissed all claims over which it has original jurisdiction, thus the third rationale of § 1367(c) applies. When all federal claims have been dismissed, the preferred disposition of state law claims is dismissal, or, where a case has come into federal court on removal,

remand to state court. *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) (citing *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996)). Taking § 1367(c) into account, the Court concludes Plaintiff's state law claims should be **DISMISSED**.


**VI.    CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment will be **GRANTED** (Court File No. 12).

An Order shall enter.


**/s/**_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**